# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMERICAN RIVER TRANSPORTATION CO., LLC d/b/a ARTCO STEVEDORING | CIVIL ACTION |
| VERSUS | NO. 19-9804 |
| M/V POLESIE, her engines, tackle, apparel etc., *in rem* | SECTION "I"(4) |

## ORDER AND REASONS

The plaintiff's **Motion to Quash/Limit Subpoena Duces Tecum to Kyle Smith (Rec. Doc. No. 10)** came before the Court on October 9, 2019, with oral argument. Based on the briefs, the arguments of counsel, and the Court's reasons given at the hearing, as supplemented herein, the Court orders the following.

## I.     Factual Background

American River Transportation Co., L.L.C. d/b/a ARTCO Stevedoring ("ARTCO") operates three midstream ship buoy systems in the Mississippi River at Mile 110 near Waggaman, Louisiana. ARTCO holds a permit from the U.S. Army Corps of Engineers as a berth for deep draft ships. The facility has three berths each with three mooring buoys at the head or upriver end of the berth and two more at the downstream end. They are typically referred to as ARTCO Mile 110 and separately as Mile 110 upper, Mile 110 middle, and Mile 110 lower. The ships using each berth have an area where they moor and drop their anchors, and the berthing areas do not overlap. No ship is allowed to berth at the ARTCO buoys without signing a berth application. The application requires that the ship leave when cargo operations are finished and if it fails to do so it must pay a charge for failure to vacate.

In March 2019, during extreme high river conditions, the M/V POLESIE, a deep draft ship, was called by her charter to unload its fertilizer cargo for ADM. ADM is the parent company for

the subsidiary ARTCO Mile 110. The M/V POLESIE's agent and Master signed the berth application, which was accepted by ARTCO, and the ship moored to discharge its cargo. She was berthed at Mile 110 upper. Neither ADM nor ARTCO Mile 110 warned the vessel's officers or her owners about any history of stuck anchors and broken mooring hawsers, winches, and windlasses at ARTCO Mile 110 during extreme high river conditions.

When she finished offloading and was supposed to leave, the M/V POLESIE could not do so because she could not lift her port anchor. The parties disagree as to the reason for this failure. The plaintiff contends that the vessel's port anchor windlass (the motor that hoists the anchor chain) was in poor condition and had not been properly maintained. The defendant argues that, when she arrived at the berth, the vessel was seaworthy and in class with no deficiencies of her anchor or mooring machinery. In either case, the M/V POLESIE tried to leave on April 11, 2019 at around 9:00 a.m. (local time) while still under extreme high river conditions. However, her port anchor was stuck in the riverbed, and her port windlass was found to be broken during the efforts to heave up the anchor. The M/V POLESIE claims that this damage was the result of the "foul holding ground" in the extreme high river conditions and not the condition of the vessel. To avoid arrest of the vessel by ARTCO when she finally left on April 12, 2019, a Letter of Undertaking was provided as a security against ARTCO's alleged delay claim in the amount of $350,000. ARTCO claims, among the other charges, liquidated damages of $216,900 (28.92 hours x $7500 per hour) for the delayed "stand-by" time under the ARTCO Stevedoring Published Ship Mooring & Associated Fees and Rules. The vessel timely paid the commercial wharfage fee in the amount of $72,685.22 and challenges ARTCO's liquidated damages as unreasonable and punitive.

## II. The Subpoena and Plaintiff's Motion to Quash/Limit

On September 20, 2019, the *in rem* claimant/defendant, Ares Nine Shipping, Ltd. on behalf of the M/V POLESIE propounded discovery and issued a Subpoena Duces Tecum to ARTCO's surveyor, Kyle Smith, served through ARTCO's counsel. Smith was the marine surveyor who inspected the M/V POLESIE's damaged winch system at a repair facility after it was taken off of the vessel. The Subpoena seeks the information specified in three section of Exhibit A (Rec. Doc. 10-2. p. 4) attached thereto which read as follows:

> I) A copy of all of your joint survey inspection files and reports from January 1, 2011 to present regarding your attendance at ARTCO Mile 110 midstream buoys or at local vessel repair yards and aboard deep draft and bulk carrier vessels being repaired there concerning alleged stuck anchors, fouled anchors, anchor windlass issues, mooring hawser issues, mooring winch issues, and any other issues allegedly causing delay to a deep draft and bulk carrier vessel anchored and/or moored at ARTCO Mile 110 midstream buoys (upper, lower, or however else designated - all the berths for deep draft vessels at ARTCO Mile 110), including but not limited to the periods of:
>
> a. May 1, 2011 to July 1, 2011;
>
> b. July 1, 2015 to August 31, 2015;
>
> c. January 1, 2016 to March 31, 2016;
>
> d. May 1, 2017 to June 30, 2017;
>
> e. November 1, 2018 to August 1, 2019.
>
> II) A copy of any and all of your survey report(s) and investigation report(s) of any kind (joint surveys or otherwise) from January 1, 2011 to present concerning efforts to recover anchors, chain, and any other debris from the river bottom at ARTCO Mile 110 midstream buoys; or to determine why vessels have anchoring difficulty, mooring difficulty, and resulting delay at ARTCO Mile 110 midstream buoys.
>
> III) A copy of any and all emails between you/your office and ARTCO Mile 110 midstream buoys facility management from January 1, 2011 to present concerning a) deep draft and bulk carrier vessel delay at ARTCO Mile 110 midstream buoys (upper/lower berth) and b) the reason(s) deep draft and bulk carrier vessels are delayed at ARTCO Mile 110 midstream buoys and measures recommended to prevent such delays.

ARTCO filed this motion to quash or limit the defendant's Subpoena Duces Tecum asserting that all three Sections are overly broad in time and scope. ARTCO further argues that the Subpoena should be limited to only non-privileged information related to the M/V POLESIE and other ships, if any, that had trouble picking up their anchors in the same ship mooring berth, Mile 110 upper, during the high water period from November 1, 2018 to August 1, 2019.

ARTCO asserts that the documents sought in the three sections of Subpoena Exhibit A are not relevant and could not lead to relevant information and could include ship delays caused by cargo operations, mooring lines, strikes, main engine problems, fuel problems, crew problems and other reasons not related to a failed anchor windlass like the M/V POLESIE at Mile 110 upper berth. In addition, the nine-year period of information would be overly burdensome on the expert as requested for all delays and not relevant to the occurrence that happened in 2019 with the M/V POLESIE. ARTCO also asserts that the request is not proportional to the burden it would place on the expert witness to locate the information.

Ares Nine Shipping as claimant/defendant opposes plaintiff's Motion to Quash/Limit asserting that the information requested by the Subpoena is essential to establish its defenses. The defendant argues in its defense that ARTCO knew of the issues with its berths in high water conditions and failed to warn vessels seeking to moor at its berths. The defendant further asserts that none of the ARTCO Mile 110 midstream buoys (upper, middle, or lower) should be in operation during extreme high river season. The defendant argues that, when compared to normal river conditions, deep draft bulk carrier vessels like the M/V POLESIE calling at ARTCO 110 midstream buoys during extreme high river season frequently experience anchor difficulties and mooring difficulties. The defendant contends that this is because of the unsafe conditions that

cause stuck anchors, fouled anchors, and issues with anchor windlasses, mooring hawsers, and mooring winches for the deep draft bulk carrier vessels calling at ARTCO Mile 110. Ares Nine Shipping also asserts that ARTCO has no standing under Fed. R. Civ. P. 45 to challenge a subpoena issued to a third-party on the grounds of relevance or undue burden. Ares Nine Shipping claims that, because Kyle Smith has not been designated as an expert witness, the protections for trial preparation communications under Fed. R. Civ. P. 26(b)(4)(B) do not apply. Ares Nine Shipping also argues that ARTCO has not asserted a privilege or right to the information being sought from Smith for standing to exist, and otherwise has not provided a privilege log.

The defendant further argues that the Subpoena does not pose an undue burden on Smith because his reports are only about five pages long and it calls for only a few reports. For example, Ares Nine Shipping contends that there were about 20 vessels between 2011 to 2018 and about 15 vessel in 2019 that became stuck at ARTCO Mile 110 during the high river season, and no vessels during normal river conditions between 2011 and 2019. In addition, the Subpoena seeks only email communications between Smith or his office and ARTCO Mile 110 Management and not communications between Smith and ARTCO's counsel. To the extent ARTCO claims that the emails requests are privileged, the burden is on plaintiff to produce a privilege log.

### III. **Standard of Review**

Fed. R. Civ. P. 45(d)(3) governs the quashing or modifying of subpoenas. The Court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). The Court may also modify or quash a

5

subpoena that requires the disclosure of a trade secret or an unretained expert's opinion that does not describe specific occurrences in dispute and results from that expert's study that was not requested by a party. Fed. R. Civ. P. 45(d)(3)(B).

Subpoenas under Rule 45 may be served upon both parties and non-parties. *Petit v. Heebe*, No. 15-3084, 2016 WL 1089351, at *2 (E.D. La. Mar. 21, 2016). However, in order to challenge the subpoena, the movant must (a) be in possession or control of the requested material, (b) be the person to whom the subpoena is issued, or (c) have a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. *See Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *see also Johnson v. Mixon*, No. 13-2629, 2014 WL 1764750, at *4 (E.D. La. May, 2, 2014). Furthermore, Fed. R. Civ. P. 45(a)(4) requires that if a subpoena commands "the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4).

As a general matter, the scope of discovery under a Rule 45 subpoena is the same as that of Fed. R. Civ. P. 26, which requires that the discovery be relevant. *See Spring v. Bd. of Trustees of Cape Fear Community College*, No. 15-CV-84, 2016 WL 4204153 at *2 (E.D.N.C. Aug. 8, 2016); *see also* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2552 (3d. ed.); *Baptiste v. The Centers, Inc.*, No. 13-cv-71, 2013 WL 3196758, at *2 (M.D. Fla. Jun. 21, 2013). As a result, "the court must examine whether a request contained in a subpoena duces tecum is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b)." *Hunsaker v. Proctor & Gamble Mfg. Co.*, No. 09-2666, 2010 WL 5463244, at *4 (D. Kan. 2010).

Rule 26(b)(1) provides that parties may obtain discovery regarding relevant information to any claim or defense as long as it is nonprivileged. Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

**IV.     Discussion**

ARTCO filed this motion seeking to quash or limit the Subpoena because it is overly broad and seeks irrelevant or privileged materials. The defendant, Ares Nine Shipping, initially challenged ARTCO's standing to bring this motion. However, the parties agreed during oral argument, and the Court finds, that Smith has been listed as ARTCO's expert and ARTCO has standing to bring this motion.

Also as clarified in oral argument, ARTCO seeks not to quash but to limit the documents requested under the three sections of the Subpoena in three ways. First, the Subpoena should be limited to Smith's information and reports related to Mile 110 upper, and not the entire facility. Second, the information and reports should be limited to matters related to anchor problems as opposed to "any delay" as requested in the various sections of the Subpoena. Third, the Subpoena should be limited in time to the past high river season, specifically from August 2018 through April 2019. The Court agrees.

The incident at issue involves a severe high water incident at ARTCO Mile 110 upper berth on April 11 and 12, 2019. The parties seek to establish the reason why the M/V POLESIE's anchor

became stuck and whether her delayed departure was due to the conditions at the ARTCO Mile 110 facility or the condition of the vessel's port winch and winch windlass. This suit concerns whether the vessel *in rem* owes delay fees or other costs to ARTCO as a result of the conditions existing in March and April of 2019 when the vessel was moored. Thus, the conditions at the facility over the past nine years are not relevant to the issue before the Court. Neither are delays during the past high water seasons caused by matters other than failed or ill-maintained winches and winch windlasses.

Ares Nine Shipping also urges that it needs Smith's files and reports from normal water level seasons to compare the lack of stuck anchor issues at the facility during normal water conditions with those during high water season. The defendant claims this will help establish its defense that the facility should not be used in extreme high water conditions. However, as explained to the Court during the hearing, the defense it urges is that ARTCO knew of dangers at its facility during the extreme high water season and failed to warn calling ships or close its buoys/berths. The lack of events during normal water seasons is probative or relevant to establishing ARTCO's knowledge of prior stuck-anchor incidents or other unacceptable conditions during the extreme high water season.

The third section of the Subpoena seeks emails from Smith. During oral argument, the parties resolved that the Subpoena only seeks those non-privileged emails. Specifically, those emails between Smith (or his office) and ARTCO management related to this incident and related to any files and reports turned over under the other sections of the Subpoena. Counsel for ARTCO has agreed to meet with Smith to facilitate the production of the files and emails within two weeks.

Counsel will also submit if necessary a privilege log for any documentation for which ARTCO would seek to urge a privilege. Thus, after considering the briefs and argument of counsel,

**IT IS ORDERED** that **ARTCO's Motion to Quash/Limit the Subpoena to Kyle Smith (Rec. Doc. No. 10)** is **GRANTED** to limit the Subpoena as outlined in this Order.

**IT IS FURTHER ORDERED** that, **on or before October 23, 2019**, in response to the Subpoena and the three sections of its Exhibit A, Kyle Smith shall produce the survey or inspection files and reports for incidents involving port and starboard winches and winch windlasses occurring at ARTCO Mile 110 upper berth from August 1, 2018 through April 30, 2019, and those non-privileged emails between Kyle Smith, or his office, and ARTCO Mile 110 facility management related to the M/V POLESIE incident and those related to the files and reports to be produced under the Subpoena as modified by this order.

**IT IS FURTHER ORDERED** that, **on or before October 23, 2019**, counsel for ARTCO shall produce a privilege log asserting any privileges claimed in connection with the particular documents and emails to be produced by Kyle Smith under the Subpoena as ordered, or notify counsel for Ares Nine Shipping, Ltd., that no privilege is being asserted.

New Orleans, Louisiana, this  16th  day of October, 2019.

```
                                    _____
                                         KAREN WELLS ROBY
                                  CHIEF UNITED STATES MAGISTRATE JUDGE
```